# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 19-CR-01300-MV |
| Plaintiff, | |
| v. | |
| DANIELA COTA-GUITIMEA | |
| Defendant. | |

## MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
## AND REQUEST FOR EVIDENTIARY HEARING

Daniela Cota-Guitimea, by and through undersigned counsel, Sarah M. Gorman, respectfully moves the Court for an order suppressing all evidence and statements obtained in violation of the Fourth Amendment of the United States Constitution.  Ms. Cota-Guitimea specifically requests suppression of the controlled substances found and any inculpatory statements made as a result of the unconstitutional seizure, detainment, and search of her luggage on April 16, 2019.

This motion is made pursuant to D.N.M. LR-Cr. 47, Rules 12 and 41 of the Federal Rules of Criminal Procedure, the records and files of the above-entitled case, and any evidence which may be adduced at an evidentiary hearing on this motion.

## I.  PROCEDURAL BACKGROUND

Ms. Cota-Guitimea was arrested on April 16, 2019.  She was charged by a grand jury indictment filed on May 8, 2019 with a violation of 21 USC §841(a)(1) and (b)(1)(A), Possession with Intent to Distribute Fentanyl.  in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Ms. Cota-Guitimea entered a plea of not guilty on May 13, 2019.

Ms. Cota-Guitimea was initially detained on April 18, 2019, however she was released from custody to the half-way house on August 14, 2019 after the Court granted her detention appeal.  The Court has granted three unopposed motions to continue the trial and motions deadlines, with a current pre-trial motions deadline of September 16, 2019 and a trial date of November 18, 2019.

## II.  FACTUAL BACKGROUND

The following facts regarding Ms. Cota-Guitimea will be adduced at an evidentiary hearing on this matter, including the specific facts relating to Ms. Cota-Guitimea.   Ms. Cota-Guitimea is a 21 year old U.S. citizen who was raised in Mexicali, Baja California.  She is fluent in Spanish and speaks and understands very little English.  Ms. Cota-Guitimea boarded an Amtrak train in Los Angeles, headed for Chicago, on April 15, 2019.  Ms. Cota-Guitimea has been addicted to methamphetamine for the past five  years, and smokes methamphetamine multiple times a day.  She smoked methamphetamine several hours before boarding the train, in the early afternoon of April 15, 2019.  While onboard the train, Ms. Cota-Guitimea also smoked liquid marijuana from another passenger.  After smoking the marijuana, Ms. Cota-Guitimea became very drowsy and disoriented and upon finding her way back to her seat, she fell asleep.

Ms. Cota-Guitimea did not awaken until Agent Perry approached her and awakened her on April 16, 2019.

On April 16, 2019 Agent Perry boarded the same train on which Ms. Cota-Guitimea was a passenger. Agent Perry boarded this train during it's scheduled stop in Albuquerque around 11:30 a.m. According to Agent Perry's audio recording and the attached audio transcript, *see* Ex. A, pp. 3-6, Agent Perry approached two people before he made contact with Ms. Cota-Guitimea. To each of those people, he identified himself as a police officer and explained that "we check then train here," Ex. A, lns 5, 81 and explained that he was checking the train for illegal narcotics and contraband. Ex. A. pp. 3-6. He did not request to search any of their luggage.

When Agent Perry approached, Ms. Cota-Guitimea, she was sitting in the middle of the coach section in the window seat. Ms. Cota-Guitimea was asleep and had been asleep since around 9:00 p.m. the night before. Ms. Cota-Guitimea awoke to Agent Perry speaking to her in English, showing her his badge, as he leaned into her seat. For reference, please see the pictures taken below of the same train, in a comparable seat to where Ms. Cota-Guitimea was sitting[1]:



---

[1] These pictures were taken of the same Amtrak train upon which Ms. Cota-Guitimea was arrested, by Defense investigator Rick Abeyta on July 26, 2019.



Agent Perry awakened Ms. Cota-Guitimea by leaning into her seat and showing his badge.  Agent Perry addressed Ms. Cota-Guitimea in English and she did not understand what he said.  Agent Perry initially stated, " . . . I'm a police officer and we check the train here.  May I speak with you for a moment?"  Ex. A, ln. 104.  Ms. Cota-Guitimea did not understand him or what was happening because she had been sleeping as a result of her methamphetamine withdrawal mixed with the effects of marijuana.  Agent Perry noted in his report that Ms. Cota-Guitimea mumbled.  She thought Agent Perry was an Amtrak employee and replied "uhm, ticket?"  Ex. A, ln. 105, in Spanish.   Agent Perry is not a fluent Spanish speaker.  *See* Transcript of Preliminary Hearing, attached as Ex. C, p. 11, ln. 11-12.  Agent Perry said, in Spanish, "I'm a police officer.  May I please speak with you?"  Ex. A, ln. 106.  Unlike with the other passengers, Agent Perry did not identify his purpose of checking passengers and the train for contraband, drugs or security purposes.  At no time throughout the entire encounter did Agent Perry advise Ms. Cota-Guitimea that she did not have to speak with him.  As Ms. Cota-Guitimea grew up in Mexico, where armed security checks of buses and trains are common and mandatory, Ms. Cota-Guitimea did not understand that she did not have to speak with Agent Perry.

Agent Perry asked her a series of questions in broken Spanish regarding her

destination and ticket.  Ms. Cota-Guitimea replied that she was traveling to Chicago from Los

Angeles.  Agent Perry continued to question her while standing at the aisle seat, similar to the

picture below from March 19, 2019 showing Agent Perry interacting in a similar way with

passengers[2]:



Agent Perry then proceeded to ask Ms. Cota-Guitimea about her luggage, "How many?  One

suitcase?  Do you have luggage here?"  Ex. A, ln. 132.  He then continued to speak to Ms. Cota-

Guitimea in broken Spanish, and she indicated in Spanish that she only understood a little

English.  Ex. A, ln. 134.   Then Agent Perry asked, "Alright. Can you, uh, maleta abajo?" and

motioned for her to stand up.  *See* Ex. A, ln. 136.  At that point Agent Perry states, "Okay, she's

going to come up . . .Sorry to interrupt ya there again.  Can I sit this here on you ma'am?"  Ex.

A, ln. 138, indicating that Ms. Cota-Guitimea is to leave her seat and come with Agent Perry

below to the luggage compartment.

---

[2]

This photo is from journalist Amy Martyn who wrote a recent article in *The Intercept*, regarding Agent Perry's questionable tactics with passengers and their luggage on Amtrak trains and Greyhound buses.  The full article can be accessed at https://theintercept.com/2019/08/31/dea-amtrak-passenger-search-albuquerque/. The full videos can be accessed at https://www.youtube.com/channel/UCmfo5p0o54zTVY10ASWdCdg.

After Agent Perry has Ms. Cota-Guitimea stand up, and follow him, he asks "Can I check your suitcase for contraband?"  Ex A, ln. 140, to which Ms. Cota-Guitimea answers "yes." Agent Perry continues to have Ms. Cota-Guitimea follow him to the luggage compartment of the train, removing her from the train, and continuing to ask questions about her luggage.  Ex. A, pp. 8-9.  After being removed from the train and while Agent Perry is trying to find Ms. Cota-Guitimea's checked luggage, Agent Perry asks twice more if he can search her luggage, to which she replies "yes."  *Id.*

Eventually, Agent Perry is unable to continue speaking with Ms. Cota-Guitimea in Spanish and he has Ms. Cota-Guitimea wait so he can find Detective Montoya, who can speak Spanish.   Both agents continue to question Ms. Cota-Guitimea because they are unable to find her luggage**.**  Ex. B.  After a further search of the checked luggage, Agent Perry finds a bag with Ms. Cota-Guitimea's name and searches the bag.  He finds suspected narcotics and places Ms. Cota-Guitimea under arrest.

### III.  LAW AND ARGUMENT

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." *U.S. Const. amend. IV*.   A Fourth Amendment intrusion conducted without a warrant is presumptively unreasonable. *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir.1998).

When the defendant challenges a warrantless search or seizure, the government carries the burden of justifying the agents' actions. *United States v. Maestas*, 2 F.3d 1485, 1491-92 (10th Cir. 1993) (citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). In other words, the government has the burden of proving that an exception to the warrant

requirement applies. See, e.g., *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (holding that the government has the burden of proving inevitable discovery); *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir.1992) (holding the government has the burden of proving exigent circumstances); *United States v. Ibarra*, 955 F.2d 1405, 1409, 1410 (10th Cir.1992) (holding that the government has the burden of proving that the impoundment of the defendant's car without a warrant was authorized under Wyoming law or Supreme Court precedent). "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 1873, 20 L. Ed. 2d 889 (1968).

A person is "seized" within the meaning of the Fourth Amendment if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Circumstances factoring into the finding of a seizure of a person include: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).

.     **A.  AGENT PERRY UNLAWFULLY SEIZED MS. COTA-GUITIMEA AND ALL EVIDENCE AND STATEMENTS MUST BE SUPPRESSED.**

A seizure does not occur simply because a police officer approaches and individual and asks a few questions. *Florida v. Bostick*, 501 U.S. 429 (1991). However, a reasonable person must still feel free "to disregard the police and go about his business." *Id*. at 434 citing *California v. Hodari D*., 499 U.S. 621, 628 (1991). In a situation such as being a passenger on a bus or train, the appropriate inquiry is whether a reasonable person would feel free to decline the

officers' requests or otherwise terminate the encounter.  *Id*. at 436.  The court has enumerated a

non-exhaustive list of factors to be considered in determining whether a reasonable person would

fee free to terminate his encounter with police:

> . . .the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Hernandez*, 847 F.3d 1257, 1264 (10th Cir. 2017) citing *United States v. Lopez*,

443 F.3d 1280, 1284 (10th Cir. 2006) (quoting *United States v. Spence*, 397 F.3d 1280 (10th Cir.

2005).   Additionally, whether an individual is advised of his or her rights is important,

particularly because warnings of Fourth Amendment rights "show the individual that the police

are prepared to recognize his choice to assert his constitutional rights."  *United State v. Ward*,

961 F.2d 1526 (10th Cir. 1992), *overruled* on other grounds by *United States v. Little*, 18 F.3d

1499 (10th Cir. 1994).  Although no single factor is dispositive, the strong presence of two or

three factors may be sufficient to support the conclusion that a seizure occurred.  *Lopez*,  443

F.3d 1284-85.

     In *United States v. Finnel*, 15 F. Supp. 2d 1126 (D.N.M. 1998), the court found that the

defendant was seized from the moment officers began questioning him.   In that case, the

defendant was questioned in a small private room on the train.  Two officers were present and

questioned that defendant in a rapid, confusing manner.  The court held that was enough, under a

totality of the circumstances approach, to constitute a seizure.

     Under the totality of the circumstances approach, Ms. Cota-Guitimea was unlawfully

seized when Agent Perry stood at her seating row and began to question her.  The test under *Bostick* is whether a reasonable person would feel free to disregard the police and go about her business.  Ms. Cota-Guitimea is 21 years old and  was awakened by Agent Perry standing over her,  at her seating row,  with a badge and being spoken to in a language she did not understand.  A reasonable person in that situation would not feel free to disregard the agent.  Even when he attempted to speak Spanish, Agent Perry did not explain to Ms. Cota-Guitimea why he was approaching her or questioning her, as he did the other passengers.  This is not the case of a passenger observing Agent Perry and having a choice to interact with him.  Agent Perry made that choice for Ms. Cota-Guitimea by waking her up and asking her questions.  At no time did Agent Perry advise Ms. Cota-Guitimea that she had the right to not speak with him.  Although, this is not dispositive, it is a factor to be considered under *Hernandez* and *Ward*.

As in *Finnel*, Ms. Cota-Guitimea was seized from the moment Agent Perry woke her up and began to ask her questions without advising her she did not have to answer the questions. She was questioned in a similarly rapid manner.  In analyzing the totality of circumstances, Ms. Cota-Guitimea was awakened from sleep, to an agent speaking a language she did not understand, showing his badge while standing over her, and not making clear that she did not have to speak with him.  This was an unlawful seizure.   Although each of these factors on their own may not be dispositive, together, as stated in *Lopez,* there is sufficient evidence to support that a seizure occurred.  A reasonable person in Ms. Cota-Guitimea's position would not have felt free to disregard Agent Perry's questioning.  Agent Perry did not have reasonable suspicion or probable cause to detain Ms. Cota-Guitimea and the seizure was unlawful.

**B.    EVEN IF AGENT PERRY'S INITIAL ENCOUNTER WAS FOUND TO BE CONSENSUAL, THE ENCOUNTER BECAME AN UNLAWFUL SEIZURE WHEN HE BEGAN TO REMOVE MS. COTA-GUITIMEA FROM THE TRAIN, CONTINUED TO QUESTION HER ON THE PLATFORM, AND CALLED AN ADDITIONAL OFFICER.**

An initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if in view of all the circumstances surrounding the incident, a reasonable person would not have believed that he was free to leave. *INS v. Delgado*, 466 U.S. 210, 215 (1984). In *Hernandez*, the court held that a reasonable person in Mr. Heranandez' circumstances would not have felt free to leave. Although that case did not involve a train, the totality of the circumstances constituted a seizure without reasonable suspicion. In that case two uniformed police officers drove alongside that defendant and asked him to stop, even after the defendant answered their questions. According to the court, that became a detention based solely on inchoate and inarticulate hunches without reasonable suspicion and was in fact an unlawful seizure.

Additionally, in *Lopez*, the court held that although that encounter with that defendant may have begun as consensual encounter, it became an unlawful seizure. In that case, a police officer observed that defendant and another man standing next to a car in a high crime area. The officer approached the men and asked for identification while his spotlight was on them. The officer then told the men to wait by the car and ran a warrants check. The officer found an active warrant and placed the defendant under arrest. The court held that the encounter was no longer consensual at the time the officer ran the warrants check. According to the court, the officer was uniformed, in a marked police cruiser, held that defendant's identification, and instructed him to wait. The court held the officer did not have probable cause or reasonable suspicion to detain that defendant while completing the warrants check and the seizure was unlawful.

Ms. Cota-Guitimea's case is very similar to *Lopez*. Even if the Court were to determine

that Agent Perry's initial questioning of Ms. Cota-Guitimea was lawful, his continued questioning about her baggage and subsequent removal from the train, advising her to wait while he found her luggage and then found a Spanish–speaking officer to assist him constitute a seizure without probable cause or reasonable suspicion.  From the moment the agent motioned for Ms. Cota-Guitimea to leave her seat and come with him to find her luggage, Ms. Cota-Guitimea was seized.  At that point, as is clear from the recording and transcript, Ms. Cota-Guitimea had not even been asked consent to search her luggage.  Just as in *Hernandez*, Ms. Cota-Guitimea answered Agent Perry's questions, as that defendant did,  but once he began to motion for her to leave her seat and follow him down the aisle outside the train, that was a seizure, just as the court determined the defendant in *Hernandez* was seized.  A reasonable person in Ms. Cota-Guitimea's position would not have felt free to leave or disregard Agent Perry.  Ms. Cota-Guitimea is a young woman who has just been awakened by an officer not being able to fluently speak with her in a language she understands, while standing at her seat aisle and motioning for her to follow him off the train.

Even more egregious, after removing Ms. Cota-Guitimea from the train and obtaining tainted and involuntary consent to search her luggage, Agent Perry continues to question Ms. Cota-Guitimea regarding her trip and her luggage while telling her to wait both for him to find the luggage and to find an officer who can properly communicate with Ms. Cota-Guitimea.  All of these circumstances are similar to what the court held were seizures in both *Hernandez* and *Lopez*.  A reasonable person in Ms. Cota-Guitimea's position would no longer feel free to "go about her business" and leave, as she was already removed from the train, questioned and asked to wait without any particularized suspicion as to criminal activity.  Ms. Cota-Guitimea was unlawfully seized, her consent to search was not valid and all evidence and statements obtained must be suppressed.

### C.  MS. COTA-GUITIMEA'S CONSENT TO SEARCH HER LUGGAGE WAS TAINTED AND INVOLUNTARY.

Evidence obtained after an illegal arrest or seizure must be suppressed as the fruit of the illegal detention.  *United States v. Recalde*, 761, F.2d 1448, 1457 (10th Cir. 1985).   In this case, because Ms. Cota-Guitimea was unlawfully seized before giving oral consent to search her luggage, the consent was not valid and the fruits of the search must be suppressed.  Moreover, even without determining that Ms. Cota-Guitimea was unlawfully seized, her consent was involuntary.  The court has established a three-tiered analysis to determine if consent was voluntary:

> First, there must be clear and positive testimony that the consent was unequivocal and specific.  Second the Government must establish that the consent was given without duress or coercion.  Finally, we evaluate those first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.

*Recalde*, 761 F.2d at 1453 (10th Cir. 1985). Although the Court in *Bostick* never made a determination as to whether an actual seizure and consensual search occurred in that case, the Court did say that it was significant that the officers in that case specifically advised that defendant that he could refuse consent.  *Bostick*, 501 U.S. at 437.  Although particular personal traits or subjective state of mind of the defendant are irrelevant in determining whether a seizure has occurred, they may be relevant to the issue of voluntariness of that person's consent.  *United States v. Zapata*, 997 F.2d 751, 757  (10th Cir. 1993).   The voluntariness of consent is determined under the totality of the circumstances, with the government bearing the burden of proof.  *Id*. at 758.  Moreover, language barriers are relevant in evaluating the defendant's ability to act knowingly, intelligently, and voluntarily.  *United States v. Farias*, 43 F. Supp 2d 1276 (D.

Utah 1999), citing *United States v. Hernandez*, 893 F. Supp. 952, 961 (D. Kan. 1995), *aff'd*, 103 F.3d 145 (10th Cir. 1996).

In *Florida v. Royer*, 460 U.S. 491 (1983), the court held that the defendant's consent was involuntary because he was being illegally detained when he consented to the search of his luggage. The court made clear that without a warrant to search that defendant's luggage, and in the absence of probable cause and exigent circumstances, the validity of the search depended on his purported consent. In that case the court held that the encounter began as consensual and then became an investigatory detention without reasonable suspicion. That defendant was taken from the public area of an airport to an investigation room and asked to consent for the search of his bags, on the officer's hunch that he was carrying narcotics. The court held the consent to search was involuntary.

Additionally, in *Farias*, the court held that although an initial traffic stop of that defendant was legal, the officer continued to detain the defendant without reasonable suspicion and the subsequent search of the vehicle was not consensual. That defendant did not speak English well and although his identification documents were returned to him, there were several times when communication broke down as a result of the language barrier. The court could not determine that consent was clear, positive, unequivocal, specific, or freely and intelligently given. *Farias*, 43 F. Supp. 2d. at 1285.

Ms. Cota-Guitimea's purported consent to search her luggage was the result of an illegal detention, just as in *Royer*, and was also involuntary. As is clear in the transcript, Agent Perry asked for Ms. Cota-Guitimea's consent to search her luggage several times, however, each time he asked was after she had already been unlawfully detained. The first time Agent Perry asks for consent is once he is already in the process of removing Ms. Cota-Guitimea from her seat. He asks again when she is waiting on the platform, but this is already after he has made her wait,

after not finding her luggage.  She is made to wait again when Agent Perry leaves to find a Spanish-speaking officer.  These facts are similar to *Farias* and *Royer*, where those defendant's were detained unlawfully, removed from their original location, and then asked to consent to a search.  The consent was unlawful and involuntary in those cases just as it is in this case.

Under the court's test, it must be clear that Ms. Cota-Guitimea's consent was clear and unequivocal and that it was free from duress and coercion.  Under *Zapata*, this Court may take into account Ms. Cota-Guitimea's  personal characteristics in the totality of the circumstances analysis.  Ms. Cota-Guitimea is a 21 year old young woman, who had been awakened from a deep sleep as a result of methamphetamine withdrawal.  Moreover, she spoke very little English and the agent did not speak fluent Spanish.  There was a language barrier to the point that Agent Perry had to seek out an additional agent who spoke Spanish in order to communicate effectively with Ms. Cota-Guitimea.  Moreover, Ms. Cota-Guitimea was raised in Mexico, where law enforcement who enters public transportation are entitled to question passengers and search luggage without cause.  This was Ms. Cota-Guitimea's frame of reference when answering Agent Perry's questions and answering "yes" to his request to search - she believed she had no choice.

Moreover, unlike the officers in *Bostick*, Agent Perry never advised Ms. Cota-Guitimea that she could refuse consent.   All of these circumstances together with Agent Perry having removed Ms. Cota-Guitimea from the train and having her wait on the platform for an extended period of time make clear that Ms. Cota-Guitimea's consent was not voluntary and free from coercion.  Just as in *Farias*, Ms. Cota-Guitimea's consent was not clear, positive, unequivocal, specific, or freely and intelligently given.  Consequently, Ms. Cota-Guitimea's consent was not voluntary and all evidence obtained as a result of the illegal search and subsequent statements must be suppressed.

## IV.  REQUEST FOR EVIDENTIARY HEARING

The government opposes this motion.

Pursuant to D.N.M.LR-Cr. 47.10, Defendant respectfully requests an evidentiary hearing on this motion because the development of supporting factual grounds for this motion will require the testimony of government and defense witnesses.

In connection with the requested evidentiary hearing, the Defendant further requests, pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, that the Government disclose to defense counsel at least forty-eight hours prior to the hearing, any statements, including grand jury testimony, of suppression hearing witnesses.  This request is made in order to avoid delays in conducting the hearing.  Defendant expressly requests leave to raise any other motions based on the facts and evidence that may arise during any evidentiary hearings in this case, and to file a supplemental brief more fully addressing the testimony given at the hearing and the applicable law.

## V.  CONCLUSION

**WHEREFORE**, for the foregoing facts and legal authorities, Daniela Cota-Guitimea, respectfully requests that the Court enter an order suppressing all evidence seized and statements made as a result of the unconstitutional seizure, detention, and arrest of her person and the illegal search of her luggage.

Respectfully Submitted,


  _/s/ Sarah M. Gorman_____
Sarah M. Gorman
1201 Lomas NW, Suite A
Albuquerque, New Mexico 87102
(505) 243-5442
*Attorney for Defendant Daniela Cota-Guitimea*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of September, I filed the foregoing electronically

through the CM/ECF system, which caused the following parties or counsel to be served by

electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew Nelson
Assistant U.S. Attorney
U.S. Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque, New Mexico 87103

_/s/ Sarah M. Gorman_
Sarah M. Gorman
1201 Lomas NW, Suite A
Albuquerque, NM 87102

17